The next case for argument is 15-1919, Xilinx v. Papps licensing. The next case for argument is 15-1919, Xilinx v. Papps licensing. May it please the court, Matthew Silvera for Xilinx. As the three separate amicus briefs filed in support of Xilinx's position here reflect, this appeal squarely presents an issue of increasing importance over the past 20 years. So is it your view that we need to take this issue on bonk in order to—or we can only find for you if we overturn Red Wing and its progeny? I think there is a path to rule in Xilinx's favor without taking this case on bonk. I think there would be a great deal of relief by the patent bar generally if the court did take the case on bonk to provide further clarity regarding Red Wing's shoe and whether it still holds validity at this stage in the game. What are precisely the factors in your case that you think can't be presented or can't be persuasive under Red Wing's shoe but ought to be under a revised analysis? Frankly, I think the only factors that cannot be considered under Red Wing's shoe are cease and desist letters alone. I think that's what Red Wing's shoe is squarely focused on. And that's what it says. It says cease and desist letters are enough for minimum contacts, but when you switch to the second prong— So that would lead you to say you can win here because you've got some stuff arguably other than cease and desist letters, right? Yes. We have quite a bit of stuff. But a lot of the stuff has to do with the subsequent cases, which have arguably gone broader than Red Wing's shoe, particularly the cases that say that you need some defense or enforcement of the actual patent. Here you have PAPS coming in and doing other licenses and doing some litigation, but not with respect to the patent at issue. Well, I think we do. We have PAPS flying into California, driving to Altera, one of its prospective licensees on this patent, and saying, you need to pay us money and take a license to this patent or we're going to sue you. And then they drive down the road— Does it make a difference that they're a non-practicing entity and that their business is suing people to collect damages or to get licenses? Judge, I do think that makes a difference, particularly when you're looking at the way the second prong of the analysis is supposed to track, which is looking at all the facts and circumstances. Would it be unreasonable and unfair to subject PAPS to jurisdiction in California? But don't we have precedent that says that whether or not the patent is commercialized is irrelevant to the analysis? I don't think so. I think what this Court's precedent says is that when you come into a forum to commercialize your product, those contacts are not relevant to the personal jurisdiction analysis in the declaratory judgment context. And I think that's pretty clearly what Avocent says and what Radio System says as well, in Judge Dyke's opinion. The question is, the prong we're talking about is a fairness prong. Yes. And is the argument that there's a different fairness analysis with respect to a company that's not in the business of commercializing it, but just in the business of suing and that the center of gravity or whatever is in California for this company? Is that the idea? I don't think it's a separate analysis. I think that the way that this Court's jurisprudence has gone has almost created a carve-out for these types of patent assertion entities, because there is some precedent out there that suggests— Wait. A carve-out suggesting that there is D.J. jurisdiction over that? No. It has said essentially patent assertion entities are almost immune from jurisdiction because of the fact that their only business is to, as Papp says on page 6 of its brief, to monetize and license intellectual property. Now, if you read some of the language in this Court's opinions, which talks about licensing negotiations, mere licensing attempts, not being sufficient for personal jurisdiction, that really does seem to provide this blanket insulation for patent assertion entities. You're talking only about immunity from jurisdiction in California, is that right? That's correct. As the initial proponent, not in response to the actions that were brought by Papp, so not in response to consent to jurisdiction in Virginia or whatever. You're talking only about jurisdiction in the California court? Yes. I'm talking about jurisdiction in the California court, which is the only forum in the U.S. that this case, that the claims, the declaratory judgment claims, arise from Papp's acts. Its acts of sending cease and desist letters into California, flying into California, and telling Xilinx and Altera that you need to take a license to this patent or we're going to sue you. So that's the forum, and we think that's absolutely the appropriate forum for suit to be brought. That's why we brought suit in California, and that's why I believe that the district court erred in several ways in concluding that there was not personal jurisdiction over Papp's in California. And I think that the first part where the court really erred does go to this burden shifting issue. The court never addressed burden. The court never held that Papp's met its burden to show that this is one of those rare cases where the exercise of jurisdiction over it would be unfair and unreasonable. Is that, is it clear to you that under the cases it's their burden to show it's unfair and unreasonable and not yours to show it's fair and reasonable? Absolutely. I think that's the precedent in this court, and it's the precedent in the Supreme Court, quite frankly. There's a burden shifting. Once you have established minimum contacts, and I think it's really important to note here, there is no dispute over minimum contacts. At page 21... No, I understand that, but I'm still not finding in this case under our current precedent what activities that Papp's engaged in would be allowable to consider. There's no direct, there's no defense or enforcement actions with respect to this patent. Well, on reasonableness, once you've switched over to the reasonableness problem, you have to look beyond just the patent itself. And if we flip over... Well, that's not what our cases say. That might be the right answer, but that's not what our binding precedent says. I think that's binding precedent of the Supreme Court, where the Supreme Court, in cases like Keaton and cases like Burger King, when you look at the reasonableness prong of this, then you are looking at things beyond just these case-specific facts, just beyond enforcement of a patent in this context. And you know that because the very first of the five Asahi factors on reasonableness is burden on the defendant. And what better way to show whether there's a burden on the defendant than whether the defendant repeatedly enters the forum to file suit in other cases? That speaks to burden. And that doesn't necessarily have to do with enforcement of the patents in suit, as here. That's something that I think Supreme Court precedent tells us we have to look at. That's something that I think this Court's decision, the recent Accorda decision, shows that you can look at the litigation activities of the defendant in that same forum, even if it's not on the exact same infringement action in the context of Accorda, obviously. So I think that's the first major flaw in the District Court's opinion, is this problem with burden shifting, where it never truly addressed the burden that was on PAPs once we shifted past minimum contacts, which we clearly did here. The second major flaw in the District Court's decision was that it seemed to announce this license negotiations simply cannot be considered under this Court's precedent, even though PAP's sole business is, as it says at page six of its brief, to monetize and license intellectual property. There's just no way that there can be a bright-line rule. I think under— Why is that? I mean, that deals with Red Wing. And Red Wing seems to—well, says that because these license activities, they promote settlement, and that's a good thing. And so it intertwined policy as well as legal reasons to say those should be immune. Well, why would it be less immune if someone took a trip over there, as opposed to engaging an email or phone contact or a letter that was the case in Red Wing? Sure. What's the difference? Well, first of all, Red Wing's shoe only said, and it says it repeatedly, cease and desist letters alone. And it uses the word alone over and over again. So that's Red Wing's shoe, and that's the ground that we're walking on there. But I do think that— But the reason, the underlying reason was that they said that this is what promotes settlement and this is a good way of practicing patent law, right? What PAPST is doing is not seeking a settlement. What PAPST has done is go to California to acquire patents from California and then to assert those against other people. That's slightly different than just settling— Well, we're talking about them going over and trying to secure a license, right? Right. And that's their entire business model. Their entire business is to seek to negotiate a license. So if you take settlement out, then you've just taken patent assertion entities out of the due process analysis for personal jurisdiction. I'm not sure I understand what you're— What other context is a company like PAPST ever going to have when their entire business is focused on trying to monetize and license their patents? But what difference does it make, or what difference should it make in our analysis of Red Wing's shoe under Burger King, et cetera, whether or not there's a firm that has some patents that they don't intend to commercialize and others that they do? And so we're dealing with, in this case, patents that they do. Let's assume that they're not completely a patent assertion entity, but they do commercialize some of their patents and others they don't. Right. Stipulating that that is actually not their business, that their business is purely monetizing licensing their patents, if that were the case, we still have to look at it as part of the overarching reasonless analysis. Isn't the point here that if a company has its center of business someplace else, it's unfair to drag it, in this case, into California simply because it's asserted its patent against somebody in California, that there's another logical place to sue that company. And what you're saying is that there isn't such another logical place to sue this company, the center of gravity doesn't exist in some other state or some other location where it could be sued. That's correct. But that's partly because it's a foreign entity, and as a foreign entity, there is a place to sue, and it's E.D. Virginia, right? Certainly. And I think, actually, the fact that they're a foreign entity is something that does speak to Burger King's settlement analysis, not Burger King, pardon, Red Wing Shoe's settlement analysis. Red Wing Shoe grounded that concept that we want to promote settlement in the fourth of the Asahi factors, which speaks to the interstate judicial system's interest in promoting the efficient resolution of disputes. Now, one could understand why there would be a promotion of the efficient resolution of disputes when you have two U.S. companies that are engaged in settlement negotiations or licensing negotiations. When you have a foreign entity, however, the interstate judicial system's interest in promoting the efficient resolution of disputes does not require Xilinx, the American company, to have to travel across the country to the Eastern District of Virginia to clear the air of infringement allegations that were levied against it in California, and that's the only place that levied those infringement allegations. Particularly here, where Pabst acquired these patents from what it refers to as its predecessor in interest, Rambis, a California company, and with which it still owes obligations to in connection with the enforcement of the patents. Well, not necessarily, right? Those are kind of contingent obligations. Well, Rambis is obligated to only offer assistance to Pabst. So Rambis is precluded from offering assistance to anyone else. But it's unclear, it's speculative whether or not they would ever offer assistance to Pabst or whether they have, right? Well, it's certainly speculative, but if we look at Burger King and the other cases that deal with contracts, all you're looking at is a continuing obligation or a continuing relationship. There is plainly a continuing relationship here. I see I'm going into my rebuttal time. Thank you. May it please the Court, the District Court lacked specific jurisdiction over Pabst under this Court's holdings in Red Wing Shoe and its progeny, and it didn't abuse its discretion by deciding... The issue is whether the fairness brawl precludes jurisdiction, right? Yes. And here, it does preclude jurisdiction. It precludes jurisdiction under Red Wing Shoe and its progeny. And it does that even though Pabst is a non-practicing entity. Red Wing Shoe was a case in which the DJ defendant, the patentee, was a non-practicing entity. The DJ plaintiff argued in that case that the Court should find jurisdiction because the defendant's sole business was patent licensing. So is your position that Pabst could not be sued anywhere in the United States? We have, of course, where they came into court as a plaintiff. There, they subjected themselves to personal jurisdiction. But are you saying that other than that, that the activities, the licensing activities, whatever they are, that took place, none of them would have subjected Pabst as a foreign company to the jurisdiction of any United States court? The fact that in this case would not have subjected Pabst to the jurisdiction in the Northern District of California, they would have been subjected to jurisdiction in the Eastern District of Virginia. But that's just because of the special statute as to foreign companies. They don't have any operations in the Eastern District of Virginia, right? No. It is specifically because of Section 293. Why does it make any sense to have everybody go over to the Eastern District of Virginia when all of your activities in the United States, whether you say they rise to the level of red-winged shoe or not, but all of the activities are predominantly the activities you have with respect to licenses, et cetera, are all in California? That's specifically the point of the personal jurisdiction analysis. It goes to the individual liberties of the non-resident defendant to fear and reason. That's exactly right. And so in this case, it's not fair to subject Pabst to jurisdiction in the Northern District of California when it's only activities related to offers to license. Why is it less fair to subject them to jurisdiction in California than in Eastern District of Virginia where they have no activities? In California, they have a substantial amount of activities. They may not fall in our cases, but they've had litigation, they've got numerous licenses, they've got the relationship with Rambis, they've traveled there. Why does it make sense under fair and reasonable interpretation to say, yes, you have to go to E.D. Virginia where there are no contacts rather than to California? It makes sense because part of the consent of being a foreign patentee is subjecting yourself to jurisdiction in Virginia. That's the contract that you make by becoming a foreign patentee by the statute. And it's known when you become a foreign patentee. Here Pabst was operating under the jurisprudence of this court and Red Wing Shoe that you have the ability to offer a license to a resident of a forum without subjecting yourself to that forum's jurisdiction. Okay, but do you agree that the fairness bond is sort of comparative? Is it fair to make them defend in this jurisdiction rather than another one, right? The fairness bond is that kind of comparative analysis, right? It can be. However, it can also be that it is not fair to subject them to that jurisdiction based solely on these activities. Yeah, but if you apply comparative analysis here, I'm having difficulty in seeing why it is unfair to let them be sued in one jurisdiction where they have activities and say that instead you have to sue them in a jurisdiction where there are no activities. I think the reason is because part of Seiling's argument is that businesses like Pabst would be insulated from a DJ action. But that's not true and we know that's not true because of Section 293. We know that, but that's a different question. The question is why is it unfair that they be sued in California when all their activities are there instead of in ED Virginia where there are no activities? Because the only activities that occurred in California were unsuccessful licensing attempts, whereas Pabst knew by statute that becoming a foreign patentee and continuing with that patent, it would be subjected to jurisdiction in Virginia. But they can sue the other side anywhere, right? Well, they can sue the other side anywhere where they were subjected to jurisdiction also. And in fact, that's exactly what happened in this case is that Pabst filed a patent infringement action against Seiling's in Delaware and that action was ultimately transferred from Delaware to the Northern District of California. Can I ask you, do you read our cases you said unsuccessful licensing activities? If there are licensing activities that were successful but deal with other patents, do you view our cases as foreclosing those from consideration under the Fair and Reasonable Problem? Absolutely. Under this Court's decisions, it has said that the only relevant activities that can make an exercise of jurisdiction comport with the fairness requirements are activities that relate to the enforcement or defense of validity of the patents at issue in the DJ action. Does that have any hook to anything the Supreme Court has told us about specific jurisdiction? I believe that it does. Under the Supreme Court's jurisdictional analysis, it has said that you must consider fairness factors. It has outlined five factors, but those are not exhaustive, exclusive factors. And as a result, we are in a situation where under this Court's precedent, exercising jurisdiction based on a licensing offer is deemed unfair or not reasonable. The Supreme Court has not addressed what you do once you are in that situation. And thus it was within this Court's ability to decide that in order to make the exercise of jurisdiction fair, the other activities must meet the minimum context requirements of international shoe. And that makes sense. Well, we're not talking about the minimum context. We're talking about the fair and reasonable as a product, right? That's correct, except this Court's jurisprudence says that once you cannot base jurisdiction on letters, notice letters, or licensing offers, that that would be unreasonable. Yeah, but those cases are all in situations where there's another forum, where there are other activities conducted by the patentee, which make that a more appropriate forum, a fairer forum in which to require that the suit be brought, no? I don't think that's correct. For example, in Deprinil, there it was a foreign, non-practicing entity, and although this Court decided that exercising jurisdiction would be fair, it didn't do so because it decided that there wasn't another, better forum. It decided that jurisdiction existed because Deprinil had entered into an exclusive license with regard to the patent issue, and that created continuing obligations. That seems to be trying to get something out of the case that's not there. Have we ever said that the fairness prong requires you to be borne from suit in a jurisdiction where all your U.S. activities occur? It has not made that statement, but the jurisprudence has definitively made the statement that the other activities may not be solely unsuccessful licensing attempts, and instead must relate to some other enforcement or defense of validity of the relevant patents. So you're saying that the other factors that we're told are present here, such as all of the potential licensees, the identity of the inventors, the various visits, the residents of counsel that are representing initially the patentee and now passed, that none of that is to be considered either as a matter of initial jurisdiction or to transfer if initially the suit had been filed in the Northern District of Virginia or in Delaware as the infringement suit was taken? No. We are saying the first part of that, which is that the other activities alleged by Xilinx aren't sufficient here to make jurisdiction comport with FairPlex. You're saying that there's no activity that could be sufficient in that case? It's hard to imagine more extensive, I'd use the word contacts without trying to put that sense than what existed here in terms of the licensing activity and negotiation, the origins of these inventions, again, the inventorship, the potential witnesses if validity is at issue. And so I just want to be clear that the position is that because the current owner is a foreign entity, that suit could only be brought under the statute in the Northern District of Virginia? Based on the facts present here, yes. And that's because to touch... I'm trying to understand when you say based on the facts, are you talking about the facts of contacts or the fact that it's a foreign owner? I'm talking about the other activities that are alleged here. The other activities alleged here are a candidate license list. If licensing offers, actual offers, aren't sufficient to make jurisdiction fair and reasonable, then a potential list of licensees shouldn't make it fair or reasonable. If an offer in a letter to license doesn't make jurisdiction fair or reasonable, then merely traveling to meet with Xilinx in its home forum shouldn't make jurisdiction fair or reasonable. But our precedent doesn't go that far. And I'm trying to understand, to be clear, as to the position as to how far precedent can go because, again, it's hard to imagine more contacts on both sides in terms of a logical forum than in California for the convenience of subsequent litigation and all else that normally could transpire. To touch on the meeting portion of it, and then I'll do it as a more global perspective, no, this court has not yet specifically stated that in-person, in-forum licensing offers are insufficient. But I think that conclusion is directed by this court's case law and by the policies underlying that case law. And the reason for that is that there have been a number of cases within this jurisprudence in which the declaratory judgment defendant has traveled to the plaintiff's forum. If that were enough, that would have been the end of the inquiry. But it never has been. In Imame, they traveled to the forum. But that was based, jurisdiction was based on the finding of an exclusive license. Same in Depernil. In Campbell, they traveled to the forum. But jurisdiction was found fair and reasonable because Campbell engaged in extrajudicial enforcement activities. But everything you say ought to persuade us that you started off by talking as if they're hard and fast and rigid rules that govern our precedent. And what you're saying here sounds more reasonable because every case stands on its own. And Judge Newman called out a few of the specific instances here that don't necessarily appear or they don't all appear at the same time in the same way. And so every case stands on its own, right? Viewing the fairness and reasonableness of it. I think we do need to consider the factors, the other activities that are elicited here. I think that's correct. And if I overstated it originally, I didn't mean to. And do we also consider, as Judge Dyke may have suggested, whether or not this is a nonpracticing entity because there's no—the availability of other forums, the number of other forums, and the availability of other forums, is that a fair factor to consider? Is that something that's precluded from our precedent? I don't think it should be considered. And the reason for that is that Red Wing Shoe was announced in a case in which the defendant was a nonpracticing entity. And it is within that case that the court decided it would not be fair— Yeah, but it wasn't a case in which the nonpracticing entity didn't have a business elsewhere in the United States. That is correct. But the issue about not having a business elsewhere in the United States is a concern that this court addressed in cases like autogenomics, where it was worried that you wouldn't be able to subject, or it at least raised the concern that yes, Red Wing Shoe may mean that a foreign entity that offers a license to a U.S. resident is not subject to jurisdiction anywhere except the Eastern District of Virginia. And that's okay, because the Declaratory Judgment Act doesn't give the declaratory judgment plaintiff a paramount right to choose the forum. It gives them a right to bring the cause of action. Yeah, but the question is whether it's unfair to require that they defend in the one place where they have activities. I mean, on the face of it, it's a little difficult to see why that's unfair. I don't think it is. The policies underlying Red Wing Shoe trump the convenience, in fact, personal jurisdiction as a general jurisprudence principle trumps the issue. What Red Wing says is, in and of itself, sending two letters, whether two letters sent there or six letters, that because of our policy of settlement, we're not going to say that that in and of itself is enough to confer DJ jurisdiction in whatever place we're talking about. That's far different from the facts we have in this case, right? That would be correct. I mean, you can see how that doesn't strike, I don't think that would strike any of us as compellingly unfair, but this is far different from that in terms of the facts, right? It is far different from that statement, but it's not far different from this court's jurisprudence. The court has gone beyond simply saying that letters, jurisdiction based on letters, would be unfair. The court has very clearly stated that jurisdiction based on unsuccessful licensing attempts is unfair, unreasonable. And the reason for that is because a patent holder, whether that patent holder holds some patents exclusively to license them or to commercialize them. But it doesn't go that far. When you say an unsuccessful licensing attempt, persistent visits by the would-be licensor, for example, changes the scenario a little bit. The fact that they're rebuffed doesn't mean that they may not have continuously, and again, as we mentioned before, in this case, all of the inventors are in California. All of the potential licensees appear to be in California. The concentration of activity in California, this is really where I'm interested in your reasons for analysis. You say that there is really never a point which suffices to support declaratory judgment jurisdiction when these offers are refused. I think that's correct. It is our position that under a reasonable application of this court's jurisprudence that a licensing offer, even when it's communicated in person. We have no jurisprudence on similar facts. We do have quite firm jurisdiction that letters saying, here's my patent. What do you think? You can have a license if you'd like it. It does not suffice. The jurisprudence is clear that unsuccessful licensing offers aren't sufficient. That's what the court specifically set forward in Breckenridge. That's what the court set forward in Hildebrand. It's also what was set forward in Red Wing Shoe which did address licensing offers, not merely cease and desist or notice letters. Red Wing Shoe's entire conversation about the policy to incentivize settlement was brought up with regard to a patentee that provides notice of its patent and in doing so may also include an offer to license. And that offer to license does not somehow make the letter a fair and reasonable basis for jurisdiction. But don't Red Wing and the other cases also rely on another policy consideration which is that you shouldn't force somebody to come from its home base to defend declaratory judgment action somewhere else simply because you've sent letters to somebody? That is correct. Okay, but that policy consideration is not implicated here because there isn't another place where their activities are centered and they're being forced to go from there to California to defend themselves. I think the issue though is that there may not be another U.S. center of activity, but that doesn't insulate PAPS from jurisdiction. So this isn't the situation where if you don't find jurisdiction in the Northern District of California, then there may be no court that can exercise jurisdiction over Xilinx claims. That's not this case. Can I ask you, one of the aspects of our precedent, which wasn't Red Wing, but it was one of the progeny, seemed to limit consideration of defense and enforcement actions other than connection with the patents and suit. Is that the way you read our precedent? Absolutely. Why is that right? Why is fair and reasonable? If you've got a whole bunch of patents, you're a patent assertion entity, and you've sued other defendants repeatedly in the Northern District of California on related patents but different patents than the patents in suit, why doesn't that establish that California has an interest and you have no fair and reasonable argument why you shouldn't be called in to defend another set of patents that you have? What does that make any sense? I think if we accept the premise from this court's jurisprudence that a licensing offer doesn't make jurisdiction fair or reasonable, then it is an extension to say once you have decided that jurisdiction would be unreasonable on that basis. But if you've availed yourself of the legal, the judicial machinery in California and all of their local rules and regulations, you have voluntarily availed yourself of that in connection with patent litigation, why wouldn't it be fair and reasonable to say that under other circumstances when there's a DJ, there's no basis for you to say, no, it's unfair, no, it's unjust to bring us in here when you've been there repeatedly enforcing your own patents against defendants in California? I think the reason is because if it's unreasonable to base it on a licensing offer, you've already determined that jurisdiction would be unreasonable. In order to make it reasonable when we're speaking about specific jurisdiction, it makes sense to go back to the requirement that the other activities, and this is from I-Named, that the other activities satisfy the minimum context requirements of international shoe. This is not general jurisdiction where we are talking about under the new test where somebody is at home. Here they are asserting jurisdiction or alleging jurisdiction under specific jurisdiction. The minimum context that exists here are the letters and the licensing offers, and this court has determined that those are not a fair or reasonable basis on their own to exercise jurisdiction. It then makes sense. We should be complaining both steps, right? I mean, the minimum context is satisfied here, and it's a question of whether or not it's fair and reasonable to bring them in. Yes, but this court has specifically said that to make it fair and reasonable, there must be other activities that satisfy the minimum context requirement of international shoe. That is this court's specific holding in I-Named at 249 F3rd 1361, and it's been repeated by this court in at least Silent Drive and Avocent. As a basic premise, in order to exercise jurisdiction, in light of letters and licensing offers, there must be other activities, and the other activities must satisfy the minimum context requirement. Thank you, Dave. Thank you very much. Thank you, Your Honors. I'd like to briefly address four points. First, I think we have to come back to the fact that all of the facts and circumstances must be considered on the reasonableness prong of the analysis, which is, as everyone's conceded, is all that we're dealing with here. And that has to include other litigation. And frankly, the Accorda case says that. But that's not what the Accorda cases say. Well, the Accorda case says that. And the Accorda case is in the context of infringement action. But Accorda says on the reasonableness prong, we can look at the fact that Mylan has litigated all sorts of ANDA suits in Delaware, which was the case there. So, I mean, we have to look at that. Otherwise, we have an inconsistency in this court's precedent. I think my overarching theme here is that there does need to be some clarity brought to this court's precedent, particularly in the declaratory judgment personal jurisdiction context. I heard an opposing counsel refer to unsuccessful licensing offers just can't be considered. That's completely out of the analysis. Redwin Shue doesn't say that. Redwin Shue dealt with three cease and desist letters. That was it. End of story. She also referred to the Hildebrand case. Frankly, the analysis of due process in Hildebrand is all dicta because the court already found that there was not jurisdiction under the forum state's long-arm statute. And then as to Breckenridge, Breckenridge wasn't about licensing offers. It didn't address licensing officers. Breckenridge was all about an exclusive licensee in the forum. And there was some language in Breckenridge, but it was not language that was in any way consistent with the facts or required by the facts of that case. To move to another point, I kept hearing opposing counsel refer to when there are licensing offers or cease and desist letters, then the plaintiff has to make it reasonable, has to identify other activities that make it reasonable to exercise jurisdiction. That shows that that reading of this court's precedent just is completely inconsistent with Supreme Court case law, which puts the burden on the defendant once the reason was pronged. So that's something that there needs to be clarification. And then finally, I would look at the Walden-Fiore case, the recent case from the Supreme Court, where it focuses on the concept of is it reasonable to expect to be held into that jurisdiction? And for PAPS to stand up and say it's not reasonable for us to expect to be held into California when we flew to California multiple times to enforce these patents against targets we had in mind when we acquired the patents from California, it just beggars belief. And the only answer that opposing counsel had for that was under this court's precedent, this court's jurisprudence required over and over again, that's precisely why we need some clarification from the court on personal jurisdiction in the declaratory judgment context. Unless the court has further questions after us. Thank you.